[Civ. No. 8756. First Appellate District, Division One.—March 15, 1933.]

LOS ANGELES ATHLETIC CLUB (a Corporation), Appellant, v. BOARD OF HARBOR COMMISSIONERS OF THE CITY OF LOS ANGELES et al., Respondents.

Hunsaker & Cosgrove for Appellant.

Erwin P. Werner, City Attorney, Frederick von Schrader, Loren A. Butts and George H. Francis, Assistant City Attorneys, and Fletcher Quillian for Respondents.

GEARY, J., *pro tem.*—Appellant herein commenced its action against the above-named defendants to quiet its title to a leasehold estate derived from respondent City of Los Angeles; to remove a cloud from its title to said leasehold estate consisting of an order of respondent Board of Harbor Commissioners declaring appellant's lease forfeited, and for declaratory relief. From the judgment of the trial court denying appellant the relief prayed for and quieting the title of the city against appellant the latter prosecutes this appeal.

Appellant herein is a California corporation with its principal place of business in the City of Los Angeles. Prior to November 27, 1920, appellant applied to respondent Board of Harbor Commissioners for a lease of a yacht harbor. On November 27, 1920, the respondent Board of Harbor Commissioners passed its order No. 571 approving said application and transmitted the same to the city council of Los Angeles, where it was approved and embodied in ordinance No. 41220 (N. S.). Thereafter said ordinance was approved by the mayor of the city, duly published as required by law, and its operation was not suspended by the referendum provision of the charter of Los Angeles. Said order No. 571 and its terms were accepted by appellant in the time and manner therein provided. The order of the Board of Harbor Commissioners and the ordinance above mentioned will be hereafter referred to as order No. 571; and the Board of Harbor Commissioners as "respondent Board" or "Board" unless otherwise expressly stated.

By its terms, order No. 571 purported to grant to appellant a thirty-year lease on certain harbor lands on the sea-

ward side of Terminal Island in said harbor, parcel one thereof to be used by appellant for the erection thereon of a clubhouse and buildings of similar nature, and parcel two thereof for the mooring of yachts. At the time order No. 571 was granted and the ordinance approving the same passed parcel one was under water. In the order it was provided that the respondent Board would fill parcel one and bring it to grade behind a seawall or jetty, which it was to construct, and it was further provided therein that the work of constructing the improvements above mentioned to be erected thereon by appellant should be committed within ninety days from and after the date the respondent Board notified appellant that parcel one was filled and ready for occupancy. The order further provided that appellant should spend not less than $50,000 upon all improvements within three years from and after said date. The respondent Board obligated itself in said order to dredge parcel two to a depth of ten feet below mean lower low water, and appellant upon its part was required at its own cost and expense to inclose parcel two by a good and substantial breakwater sufficient to insure quiet water within parcel two. Rental was fixed at $300 per quarter for the first ten years, and appellant was required within fifteen days after the effective date of the ordinance to pay the rental in advance for the first three months after service of notice by the Board that the premises were ready for occupancy. This rental was properly paid by appellant. After the granting of the order the work of filling parcel one—to be performed by the respondent Board—progressed slowly. Frequent letters were written by appellant to the Board urging completion of the fill agreed upon, but as the actual work of filling was to be done by the contractor for the United States government, control of the project was not actually in the Board. The Board did, however, raise and repair the seawall or jetty and the same was completed in November, 1925. Thereupon, on November 12, 1925, the Board notified appellant that the seawall was completed and called upon appellant to commence the construction of the breakwater and other improvements. It was stipulated that this notice was intended to be the notice specified in order No. 571, by the terms of which the ninety-day period was to start, in which appellant should commence the erection of the improvements

to be constructed by it. Appellant, upon receipt of the aforesaid notice, took the position that the same was premature in that parcel one had not been filled to grade and hence was not ready for occupancy. Appellant offered to permit rental to begin but objected to the construction of its clubhouse on parcel one until such time as parcel one had been properly filled. Appellant likewise agreed to proceed with the construction of its wharf on parcel two, to which reference will be hereafter made. Appellant thereafter made application to the district engineer, United States War Department, in charge of federal government work in Los Angeles harbor, for a permit to construct the rock-filled breakwater in parcel two in conformity with order No. 571, subdivision two of section two thereof. Objection to the granting of this application was made by respondent Board, the effect of which was to prevent appellant from complying with this requirement of order No. 571. Reference will likewise hereafter be made to certain facts in regard to this matter. As the construction of the breakwater and the dredging of parcel two were more or less dependent one upon the other, respondents have not performed the dredging provided for in order No. 571. As a result of the Board's opposition to the construction of the breakwater by appellant, on August 25, 1926, the Board duly passed its order No. 1059, the effect of which was to amend its order No. 571 by relieving appellant of its obligation under the earlier order to spend the sum of $50,000 for improvements within three years after November 12, 1925. At the same time the Board adopted its order No. 1060 granting to appellant temporary use of an anchorage behind the rock jetty in the harbor. It is apparent that it was the purpose of said orders to relieve appellant of its obligation to construct the breakwater and at the same time afford it a temporary anchorage until such time as the respondents could determine when and whether the United States would construct a breakwater. Nothing further occurred with reference to the construction work on parcels one and two by either of the parties thereto. On November 24, 1926, respondent Board leased a parcel of water frontage some 675 feet distant from parcel one to Ocean Products Corporation for the purpose of erecting and operating thereon a fish fertilizer plant. The plant was erected and its operation commenced,

which naturally (according to the testimony) resulted in the creation of a stench, which was carried—at least to some extent—across parcel one. This lease was later surrendered and a new lease made of the water frontage and fertilizer plant to another corporation, the Board reserving therein the right to cease the operation thereof in the event objectionable odors were disseminated.

On or about December 28, 1928, the respondent Board, without previous notice to appellant, passed a resolution that its order No. 571 be declared forfeited by reason of appellant's failure to comply with the terms thereof. Upon appellant's objection the matter was continued, but on February 6, 1929, the Board passed its order No. 1164, declaring the lease to appellant forfeited by reason of appellant's failure to erect a clubhouse upon the premises or to use any part of the premises for the operation of a clubhouse thereon. Thereupon appellant brought this action.

The complaint is in three counts. In the first count there is alleged the passage of the ordinance approving order No. 571 and appellant's ownership of the leasehold; the performance by it of all conditions precedent including payment of rent, the matters in excuse, waiver and avoidance of its failure to erect a clubhouse and breakwater, and the prayer that appellant's title be quieted. In the second count the cloud upon appellant's title resulting from respondent Board's order No. 1164 is asked to be removed; and in the third count appellant asks that its damages resulting from the odors from the fertilizing plant be determined and when so determined that they be offsets against rents due and to become due. Subsequently, appellant by an amendment to its complaint alleged that respondent Board had never served the thirty-day notice mentioned in order No. 571, which by the terms of said order was the first requirement in declaring a forfeiture. It was stipulated at the trial that no such notice was ever served upon appellant.

At the time the order No. 571 of respondent Board and Ordinance No. 41220 (N. S.) were adopted, section 183, subdivisions (a) and (d), of the old charter of the City of Los Angeles provided (Stats. 1913, p. 1642): ''Sec. 183. (a) It shall be unlawful to grant, sell, convey, alienate, transfer or otherwise dispose of, except as hereinafter provided, any part of, or any interest in, the water front, tidelands, submerged

lands, or appurtenances thereunto belonging, owned, possessed, controlled or held by the City of Los Angeles; . . . Such franchises, leases, privileges and permits shall be granted subject to such terms and conditions as may be prescribed therein, and to the limitations, conditions, restrictions and reservations in this section contained, but no such franchise, lease, privilege or permit shall be valid or binding upon the city until the same is approved by the council by ordinance." "(d) . . . In case of any such grant, the same shall be made only upon the condition, *whether expressed therein or not,* that the construction of the wharves, docks, warehouses or other works or structures provided for therein shall, if the same be not already constructed, be commenced *within ninety days from the date of such grant,* and be prosecuted diligently to completion under such further terms and conditions as may be prescribed therein." (Italics ours.)

Two questions are presented for determination herein: Was the permit or lease granted to appellant by the respondent Board and duly and regularly approved by the city council of Los Angeles in violation of the foregoing terms of the charter so as to render the same void *ab initio?* Has the lease to appellant been lawfully terminated?

It appears from an examination of order No. 571 that it was the intent of the parties thereto to create a lease, the effective date of which was to be delayed or postponed until respondent Board had the opportunity to fill parcel one so as to render the same ready for occupancy by appellant and had given appellant the notice thereof provided for in paragraph 3 of said order. However, the authority of the respondent Harbor Board is expressly limited by the above language of section 183, subdivision (d), of the charter, wherein it is stated that the construction of the improvements "in case of any such grant" therein provided for shall be commenced within ninety days "from the date of such grant". It will be noted that the charter provision does not read "from the *effective* date of such grant". That the expression "date of such grant" refers to the date of the instrument creating the same and not to the estate granted as contended by appellant is too obvious to be open to doubt. Aside from the language of the section and of the grant to the city of the harbor lands in question clearly dictating this

construction, to hold otherwise would be in utter disregard of the policy long established in this state, that a lease of harbor lands should be made ''with proper *restrictions of time* and proper regard to public and *quasi*-public use . . . so that private enterprise and capital may build up the commerce of our seaport cities''. (Italics ours.) (*San Pedro etc. R. Co.* v. *Hamilton,* 161 Cal. 610, 620 [119 Pac. 1073, 1077, 37 L. R. A. (N. S.) 686] ; *Oakland* v. *Larue Wharf etc. Co.,* 179 Cal. 207, 215 [176 Pac. 361].)

▮ Is the grant to appellant herein void by reason of the failure of order No. 571 to contain the charter proviso that the construction of the improvements therein provided for shall be commenced within ninety days from the date thereof? Every legal step so far as the mere mechanics of the law are concerned was duly observed in the granting of order No. 571 and its approval by the city council. The ''mode'' was entirely proper. Had section 183, subdivision (d) of the charter simply declared that any grant should be made only upon the condition that the improvements therein provided for should be commenced within ninety days from the date thereof, since order No. 571 contains no such condition, the same would be *ultra vires* and void *ab initio.* (*Zottman* v. *San Francisco,* 20 Cal. 96, 102 [81 Am. Dec. 96] ; *Times Publishing Co.* v. *Weatherby,* 139 Cal. 618 [73 Pac. 465] ; *Shaw* v. *San Francisco,* 13 Cal. App. 547, 549 [110 Pac. 149] ; *Wichmann* v. *City of Placerville,* 147 Cal. 162, 164 [81 Pac. 537] ; *Foxen* v. *City of Santa Barbara,* 166 Cal. 77, 81, 82 [134 Pac. 1142].) However, the section and subdivision thereof of the charter do not so provide. The provision set forth therein goes much further in that it declares that the condition mentioned shall be a part of any grant *''whether expressed therein or not''.* (Italics ours.) Thus, anyone dealing with the respondent Board was given notice by the very terms of the charter that, regardless of the views of the members of the respondent Board as to the desirability of such a condition in a given case, such condition was necessarily included in any grant made by the Board. ''In determining the extent and limitations of the contract, the terms of the statute under which the proceedings were taken must be taken into consideration. *The provisions of the statute were a part of the contract and must be held to have been personally known to every*

*elector* whose approval was sought and registered at the election." (Italics ours.) (*Los Angeles County Flood Control District* v. *Wright,* 213 Cal. 335, 349 [2 Pac. (2d) 168].)

So, in the case of *Chapman* v. *Jocelyn,* 182 Cal. 294, at page 297 [187 Pac. 962, 963], our Supreme Court states: "A street assessment is a contract and *the provisions of the statute in force at the time prescribing the manner of its enforcement are a part of such contract.*" (Italics ours.) (*Harter* v. *San Jose,* 141 Cal. 659, 667 [75 Pac. 344]; *Kennedy* v. *City of Gustine,* 210 Cal. 18, 20 [290 Pac. 38]; 6 Cal. Jur. 310, 311.) The condition in question as set forth in section 183, subdivision (d), of the charter must therefore be held to be included in the lease to appellant as a matter of law. Hence the grant of the lease to appellant was not void *ab initio,* but a valid lease containing as a condition the provisions of section 183, subdivision (d), of the charter.

The ordinance approving order No. 571 became effective February 3, 1921, so that by the aforementioned condition contained in the order appellant was to commence the construction of the improvements therein mentioned within ninety days from and after that date. This condition was not complied with by appellant. Does the failure of appellant to meet this condition automatically terminate the lease? ▮ Before disposing of this question it becomes necessary and proper to ascertain in what capacity the respondent city was acting when the lease was made; whether the lease was a governmental function of the city or the act of the corporation in its private or proprietary capacity. Respondent city received title to the harbor lands involved herein by grant from the legislature of this state (Stats. 1911, p. 1256). The statute granting same provides in part: "(a) That said lands shall be used by said city, and by its successors, solely for the establishment, improvement and conduct of a harbor, and for the construction, maintenance and operation thereon of wharves, docks, piers, slips, quays and other utilities, structures and appliances necessary or convenient for the promotion and accommodation of commerce and navigation, and said city, or its successors, shall not, at any time, grant, convey, give or alien said lands, or any part thereof, to any individual, firm or corporation for any purpose whatsoever; *provided,* that said city, or its successors, may grant franchises

thereon for limited periods, for wharves or other public uses and purposes, *and may lease said lands or any part thereof for limited periods, for purposes consistent with the trusts upon which said lands are held by the state of California,* and with the requirements of commerce or navigation at said harbor.'' (Italics ours.)

While it is true that the development and control of a harbor are of great benefit to a community and the merchants and citizens thereof, can it be held that the powers and duties of a municipality in regard thereto are in their essence governmental? The decision of our Supreme Court in *Chafor* v. *City of Long Beach,* 174 Cal. 478 [163 Pac. 670, Ann. Cas. 1918D, 106, L. R. A. 1917E, 685], determines this question in the negative. This determination must be held to apply herein at least as regards the powers of the city with reference to the *leasing* of harbor lands. It will be observed that in the grant of harbor lands to respondent city by the state the right given the city to *lease* is clearly an enlargement of the right granted in the preceding clause authorizing the city to grant franchises for wharves and other public uses. If by any chance the use of the term ''public uses'' can render the grant of a franchise thereunder a ''governmental function'', the same is not applicable where leases are made by a city to private parties. ''A city or town is not liable to a private citizen for an injury caused by any defect or want of repair in a city or town hall or other public building erected and used solely for municipal purposes, or for negligence of its agents in the management of such buildings. This is because it is not liable to private actions for omission or neglect to perform a corporate duty imposed by general laws upon all cities and towns alike, from the performance of which it derives no compensation. But when a city or town does not devote such building exclusively to municipal uses, *but lets it, or a part of it, for its own advantage and emoluments,* by receiving rents, *or otherwise, it is liable while it is so let in the same manner as a private owner would be.*'' (Italics ours.) (*Worden* v. *New Bedford,* 131 Mass. 23 [41 Am. Rep. 185, at 186] ; *Pacific Coast S. S. Co.* v. *Kimball,* 114 Cal. 414, 417 [46 Pac. 275, 276].) It being thus determined that in the lease to appellant respondent city was not exercising a governmental function but a private or

proprietary one, it follows that the lease granted must be construed according to the same principles of construction as apply to a lease between any private parties. "As the city had a right to lease a wharf for private use, the grant must be adjudged like any other, and we cannot put a condition upon the estate which is not expressed or clearly implied." (*Pacific Coast S. S. Co.* v. *Kimball, supra.*) "It is well settled that the contract of a municipal corporation, when exercising other than its governmental functions, and within the limits of its charter powers, are construed by the same laws that govern the contracts of private parties. Thus the doctrine of estoppel in such a contract may be invoked on behalf of or against a municipality." (*Brown* v. *Town of Sebastopol,* 153 Cal. 704, 709 [96 Pac. 363, 365, 19 L. R. A. (N. S.) 178]; McQuillin, Municipal Corporations, vol. 3, sec. 1370; 18 Cal. Jur., p. 1037.)

The condition set forth in section 183, subdivision (d), of the charter, and made a part of order No. 571 by operation of law, providing in effect that the construction of improvements must be commenced within ninety days from the date of grant was a condition subsequent. "A condition subsequent is one referring to a future event, upon the happening of which the obligation becomes no longer binding upon the other party, *if he chooses to avail himself of the condition.*" (Italics ours.) (Civ. Code, sec. 1438.) It is a qualification annexed to an estate by the grantor, upon the happening of which the estate granted is enlarged or defeated. (*Pedro* v. *Potter,* 197 Cal. 751, 758 [242 Pac. 926, 42 A. L. R. 1165]; *Knight* v. *Black,* 19 Cal. App. 518, 522 [126 Pac. 512]; 15 Cal. Jur., p. 631.) The condition set forth in the charter can be waived by the grantor. (*Los Angeles etc. Land Co.* v. *Marr,* 187 Cal. 126, 133 [200 Pac. 1051]; *Brown* v. *Wrightman,* 5 Cal. App. 391, 393 [90 Pac. 467]; *Quatman* v. *McCray,* 128 Cal. 285, 292 [60 Pac. 855]; 9 Cal. Jur., p. 377.) "The mere breach of conditions subsequent does not *ipso facto* effect a reverter of the title until the proper steps are taken to consummate the forfeiture." (9 Cal. Jur., p. 369.) "Whether a breach of conditions, by the grantee of a franchise, works a forfeiture *ipso facto* depends on the language of the grant or the governing statute . . . if the statute provides that failure to complete the work within the time specified by the muni-

cipality 'works a forfeiture', the statute is self-executing, and failure to complete the work within the time specified . . . *ipso facto* forfeits its franchise . . . '' (McQuillin, Municipal Corporations, vol. 4, sec. 1796; *Los Angeles Ry. Co.* v. *Los Angeles,* 152 Cal. 242, 245 [92 Pac. 490, 125 Am. St. Rep. 54, 15 L. R. A. (N. S.) 1269].) ▮ There is no ''*self-executing*'' provision in either the charter or order No. 571 *ipso facto* terminating the lease on breach of the condition in question. On the contrary, the parties thereto have agreed as to the precise manner in which the same shall be terminated upon breach of condition. Order No. 571 by section 3 thereof provides: ''That upon the neglect, failure or refusal by the grantee to comply with any of the terms *or conditions* of this permit, *after thirty* (30) *days' notice and demand in writing* by the Board of Harbor Commissioners to comply with any such terms *or conditions,* the said Board of Harbor Commissioners may thereupon declare this permit forfeited, and may exclude said grantee from further use of said premises . . . and said grantee shall thereupon and immediately surrender all rights in and to the same, and this permit shall be deemed to be, and shall remain, null, void and of no effect.'' (Italics ours.)

It was stipulated at the trial hereof that no such notice as in section 3 provided for was ever served upon appellant. In order to terminate its lease it was necessary that respondents comply with the condition set forth in section 3 of order No. 571 and serve appellant with the thirty-day notice therein mentioned. Until this is done no forfeiture can be declared. ''A condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created.'' (Civ. Code, sec. 1442; *Jameson* v. *Chanslor-Canfield M. Oil Co.,* 176 Cal. 1, 5, 6 [167 Pac. 369]; *Taylor* v. *Hamilton,* 194 Cal. 768, 776 [230 Pac. 656].) The lease to appellant has not therefore been legally terminated.

▮ There is a further reason why the lease to appellant herein has not been lawfully terminated. In order to properly present this phase of the case it will be necessary to disclose in more detail certain stipulated facts regarding the transactions between the parties. On February 6, 1929, respondent Board adopted its order No. 1164, wherein it is declared: '' . . . Order No. 571 . . . is hereby declared forfeited for failure of the grantee of said permit to comply

with the terms and conditions thereof in this, *that said grantee has not constructed a clubhouse upon the premises described in said permit, and has failed to use, and is not now using, said premises, or any part thereof, for the purpose of maintaining and operating thereon a clubhouse."* (Italics ours.)

Subsequent to the receipt of the communication of November 12, 1925, wherein appellant was advised that the retaining wall and fill had been completed by respondent Board, appellant communicated with respondent Board and objected that the work of filling parcel one had not been completed within the terms of the lease. This matter was referred to the engineer for the Board. His report thereon to the Board, dated December 1, 1925, not only admits that appellant's objection was well taken but also reveals a possible explanation of respondent's subsequent conduct with reference to its order No. 571. The report states in part: " . . . *it is also a fact, as Mr. Garbutt* [vice-president of appellant] *states, that the fill has not been entirely completed back of the retaining wall. This has not been done* because it would be every expensive to make this fill until such time as the suction dredging work was done in front of the wall just completed, and it was thought that until such time as the Los Angeles Athletic Club desired to use this area, that this improvement should not be made. . . . *It has always seemed to the undersigned that the location of the above lease is not a desirable one as far as the Harbor Department is concerned because of the possible future development in this district. The rental too is entirely too low for the amount of space which they have leased."* (Italics ours.)

However, following negotiations between the parties, appellant on February 5, 1926, paid rental to respondents in accordance with the terms of order No. 571, and thereafter regularly paid the rental stipulated up to and including the rental due on or about December 1, 1928, which payments respondents accepted. Thereafter appellant has properly tendered the stipulated rental, which respondents have refused by reason of the purported termination of the lease.

On February 5, 1926, appellant commenced the construction of a wharf on parcel two, which was an improvement contemplated by order No. 571 and the plans for improve-

ment submitted pursuant thereto. The location of the wharf was changed from that shown in the original plan therefor but the change in plan was regularly approved by respondent Board. The construction of the wharf by appellant was completed without objection at a cost of approximately $6,000–$7,000. On February 4, 1926, appellant applied to the district engineer of the United States War Department for a permit to construct the breakwater to be constructed by it in accordance with the terms of order No. 571. Thereupon, after the recommendation of its harbor engineer so to do, respondent Board directed its engineer to appear at the hearing of appellant's application before the district engineer and oppose the granting of same. The recommendation of the harbor engineer to respondent Board contains the following language: *"Although the lessee is required to build a breakwater according to the lease granted by a former Board, I believe we should vigorously protest this proposed improvement, which contemplates the rock-fill bulkhead, for the reason that it is a great detriment to the Harbor."* (Italics ours.)

Thereafter appellant, in view of the opposition of respondent Board to the granting of the permit authorizing the construction of the breakwater, withdrew its application therefor.

On May 27, 1926, appellant addressed a communication to respondent Board with reference to the lease. Therein appellant declared that the condition of the lease was unsatisfactory in that by reason of the opposition of the Board to the granting of the permit for the construction of the breakwater, appellant was placed in the position where it was impracticable for it to utilize the premises leased. Appellant suggested a modification of the lease upon the following terms: "1. *We continue to pay rent in accordance with our contract;* 2. That you *waive the further expenditure of money by us* in improving this site *until you have made it accessible and completed the filling and given us further notice thereof* and until we are enabled to build a breakwater or until the Government breakwater is under construction sufficient to protect this area. 3. That in view of our paying rent before this is done that you give us a temporary lease for the use of all of the water behind the jetty already erected for such period of time as this remains

unfilled and until you need it for some commercial purpose, you to have the right to cancel this lease on any reasonable notice which you may now designate. . . . ''

Respondent Board thereupon referred said communication to a committee composed of its general manager, its engineer and its attorney, for investigation and report. This committee on August 3, 1926, made its report to respondent Board, wherein it is stated in part: ''When the Club accepted the board's order and commenced to pay rent last November it protested that the work of filling done by the city was not complete enough to permit it going ahead with the permanent land improvements which it desired to make *and that fact, coupled with the objection to the breakwater as proposed, places the Club in a position where it is paying rent under the permit but is unable to proceed with improvements it contemplates making,* while at the same time *it is faced with the obligation of making an expenditure of at least $50,000 on improvements within* three years from last November *with no definite assurance as to when it may be permitted to proceed in accordance with its permit. . . .* After consideration of the matter your committee wishes to recommend that the water area shown on the map be assigned to the Los Angeles Athletic Club under temporary permission, revocable on six months' notice, to be used for anchorage purposes *and that the 30 year permit held by the Club under Order 571 be amended in such particulars as may be necessary* [to] *relieve the Club from the obligation of expending not less than $50,000 'from and after the date the Board of Harbor Commissioners notifies the grantee in writing that Parcel No. 1 is filled and ready for occupancy', which time commenced to run in November, 1925.''*

Thereafter the respondent Board, on August 25, 1926, adopted its order No. 1059, wherein by the terms thereof subdivision 3 of section 2 of order No. 571 was amended by eliminating therefrom the following clause: ''and the grantee shall expend not less than $50,000 upon all improvements proposed to be made under authority of this permit within three (3) years from and after said date''. This amendment to order No. 571 was regularly approved by the city council of Los Angeles on December 29, 1926. At or about the same time the Board adopted its order No. 1060 (August 25, 1926), wherein appellant was granted a temporary yacht

anchorage behind the harbor jetty, revocable upon six months' notice. Regardless of the question whether order No. 1059 was in violation of section 183, subdivision (d), of the Los Angeles charter in that it waived the provision thereof requiring that the construction of improvements ''be prosecuted diligently to completion''—which need not be determined herein—the adoption of that order and of order No. 1060 may properly be considered in so far as the same reveals the conduct of the parties under the lease. As we have previously pointed out, under the provisions of section 183, subdivision (d), of the charter, respondent Board had the privilege of terminating the lease to appellant by the service of the proper notice demanding that appellant comply with the provisions of the charter therein contained. This respondent Board failed to do. Not only did respondent Board fail to serve this notice, but on November 12, 1925, they gave to appellant the notice hereinbefore mentioned, resulting in the construction of the wharf by appellant at considerable expense and the payment of rental at regular intervals thereafter. The rental was paid by appellant and accepted by respondent from February, 1926— almost up to the very date when respondent Board purported to cancel the lease. Whether the amendment of order No. 571 by order No. 1059 on August 25, 1926, was effective or otherwise, it, together with order No. 1060, certainly indicated to appellant an intent on the part of respondent Board to waive any forfeiture under the lease. The stipulated evidence indicates that at all times appellant herein has acted in entire good faith under its lease, and that any failure upon its part to comply with the terms thereof has been due entirely to the acts of respondent Board. Under such circumstances, can respondents' conduct be permitted to defeat the right of appellant under the lease? The answer must be an emphatic negative. The conduct of respondents in so far as the same forms the basis of a forfeiture of appellant's rights under the lease is repugnant to those principles of equity and fair dealing which should characterize transactions between men. ■ As heretofore pointed out, respondent in the lease to appellant acted in its proprietary capacity. Therefore the lease must be construed in the same manner as a lease between any private parties. For the same reason the conduct of the parties in

regard thereto must be viewed in a like manner. The fact that one of the parties to the lease is the agent of a municipal corporation does not relieve it of either its legal or moral obligations thereunder, nor should it do so. Indeed, it would not be wholly unnatural for one to look to his government to recognize its apparent obligations even more readily than an individual. The acts of respondent Board hereinbefore mentioned must be deemed to constitute a waiver and estoppel. This is true whether the duties of appellant under its lease be considered as a continuing condition or otherwise. ▇ For a covenant or condition continuing in its nature may be waived quite as well as a condition not of a continuing nature. The distinction between the two in determining whether a waiver has occurred is in the proof, for both must be said to rest upon the *intent* of the parties. " . . . in the application of this rule there is a distinct difference between a covenant or condition which is of a continuing nature and one not of that nature. While the unconditional acceptance by the landlord of moneys as rent, which rent has accrued after the time a tenant should have surrendered possession, will constitute strong evidence of the landlord's waiver of his notice to quit, *nevertheless the question of waiver is one of intent.* Waiver is the intentional relinquishment of a known right after knowledge of the facts. *To establish such waiver the evidence must indicate a meeting of minds and the intentional forbearance to enforce a right.* (*Alden* v. *Mayfield,* 164 Cal. 6, at p. 11 [127 Pac. 45].) Where the general course of dealing between parties has led one of them to believe that a strict compliance with the terms of a condition binding him will not be required, the other party may be estopped from claiming the forfeiture." (*Myers* v. *Herskowitz,* 33 Cal. App. 581, 583, 584 [165 Pac. 1031, 1033]; *Kern Sunset Oil Co.* v. *Good Roads Oil Co.,* 214 Cal. 435 [6 Pac. (2d) 71, 80 A. L. R. 453].)

In the instant case the amendment of order No. 571 by order No. 1059, the acceptance of rental for the entire period from February, 1926, to February, 1929, and the acquiescence in the construction of the wharf by appellant all indicated an intent upon the part of respondent Board to waive further construction by appellant under the lease

until the premises leased were rendered suitable by respondent Board for appellant's purposes.

The findings of the trial court herein are uniformly contrary to the evidence hereinbefore stated. However, such evidence as is referred to or stated herein is founded upon the stipulation of the parties. The stipulation was binding upon the parties as to material facts. Under such circumstances findings contrary thereto should be disregarded. (*J. Dewing Co.* v. *Thompson,* 19 Cal. App. 85, 87 [124 Pac. 1035]; *Lambert* v. *Lambert,* 1 Cal. App. 114, 115 [81 Pac. 715]; *Crawford* v. *Imperial Irr. Dist.,* 200 Cal. 318, 335 [253 Pac. 726]; 24 Cal. Jur. 984.)

By reason of the stipulated facts herein with reference to appellant's first and second causes of action and the law properly applicable thereto, the judgment as to appellant's first and second causes of action is reversed, and the trial court is directed to enter judgment thereon as herein indicated.

As regards appellant's third cause of action, no stipulation was made except as to the granting of the lease for, and the operation upon the premises leased of, a fish fertilizer factory. There is practically no dispute in the evidence as to the effect of the odor emitted therefrom, namely, that it is nauseous and such as to render the use of the leased premises by appellant entirely impracticable. It does not appear from the evidence, however, that appellant's failure to use the premises was due to the location of the fish fertilizer factory in the locality of appellant's leasehold, but rather to the physical condition of parcels one and two, which prevent appellant from utilizing the same for the purposes intended. Therefore, this court cannot hold that appellant has been damaged in the manner alleged in its third cause of action.

Knight, Acting P. J., and Cashin, J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 13, 1933.

Shenk, J., Curtis, J., and Langdon, J., dissented.