[L. A. No. 10329. In Bank.—June 27, 1930.]

THE PEOPLE, Appellants, v. W. L. MONSTAD, Respondent.

U. S. Webb, Attorney-General, Leon French and John W. Maltman, Deputies Attorney-General, Overton, Lyman & Plumb, Harry Polglase and William R. James for Appellants.

Frank L. Perry for Respondent.

RICHARDS, J.—This *quo warranto* proceeding was brought for the purpose of excluding the defendant from holding or claiming to hold any rights, privileges or franchises on or in connection with a certain wharf, and to have a certain lease between the city of Redondo Beach, a city of the sixth class, and defendant declared illegal. The wharf in question was constructed by defendant and is now being operated by him, in reliance on the above mentioned lease, upon certain tide and submerged lands situated in the harbor of the city of Redondo Beach.

The findings of fact disclose that on November 30, 1925, a certain agreement, designated as a "lease and agreement," was entered into between defendant and the city, such agreement purporting to lease to the defendant the tide and submerged lands in question, for the purpose of

the construction, maintenance and operation of a wharf by defendant thereon; that defendant, in reliance on this agreement, constructed a wharf as provided, and maintained and operated the same until July 19, 1926; that on that date the parties to the above agreement expressly rescinded and revoked the first lease and entered into an "amended lease" for the identical lands covered by the first lease; that the amended lease omitted many of the provisions of the first lease.

The amended lease, which is the only one to be considered inasmuch as the first lease was expressly rescinded and superseded by it, provides that the city leases to defendant for a period of twenty years, at a specified rental, certain described tide and submerged lands belonging to the city, "for the purpose of constructing, maintaining and operating thereon a *pleasure wharf*, to be used for the furnishing of fishing and landing facilities, and for purposes incidental thereto, with the privilege of maintaining, repairing, extending, enlarging and operating thereon, the pier or structure heretofore constructed on said lands by said lessee, *as a private pleasure pier*." (Italics ours.) The lessee covenants to keep the pier in good repair, and to maintain the same in a safe and sanitary condition; the lessee is given permission to erect and maintain a fishing and bait stand, such necessary booths as may be necessary, and such fishing concessionary businesses as are sanitary, provided that the consent of the board of trustees must first be secured for the erection of any additional buildings; pole fishermen may use the pier without cost or expense; the lessee is to pay all taxes; the city to be held free of liability for injuries to any person on the wharf, and the lessee is to carry liability and compensation insurance. It is also provided that upon the termination of the lease all improvements on the leased property shall become the property of the city, and the city is given the right to terminate the lease at any time after five years by paying to the lessee the then value of the improvements constructed by him thereon, but the city is not to exercise such right for the purpose of re-leasing the property to others.

The main objection of complainant to both leases is that they were not executed in the manner provided in the "Broughton Act," Act 2720, General Laws. (Stats. 1905,

p. 777.) Appellants contend that that act provides the sole and only manner by which a city may lease its tide and submerged lands, and that a lease executed in any other manner is void. It is admitted that the procedure provided in the Broughton Act was not followed in the execution of either lease, and that the leases were awarded to defendant by resolution of the city trustees duly passed and approved.

Before discussing the main problem here presented, certain well-settled principles in reference to tide and submerged lands must be kept in mind. The title to tide and submerged lands undoubtedly is in the state, but the state may grant, and frequently has granted lands of this character to cities, subject only to the rights of the public to use them for purposes of navigation and fishing. (18 Cal. Jur. 1031, sec. 294.) The tide and submerged lands bordering the shore line of the city of Redondo Beach were granted to the city by the state by Statutes of 1915, p. 62. This act is almost identical with acts granting tide and submerged lands to many other cities. That act, in so far as pertinent here, provides:

"Said lands shall be used by said city and by its successors, solely for the establishment, improvement and conduct of a harbor and for the establishment and construction of bulkheads or breakwaters for the protection of lands within its boundaries, or for the protection of its harbor, and for the construction, maintenance and operation thereon of wharves, docks, piers, ships, quays and other utilities, structures and appliances necessary or convenient for the promotion or accommodation of commerce and navigation, and the protection of the lands within said city, and said city, or its successors, shall not, at any time, grant, convey, give or alien said lands, or any part thereof, to any individual, firm or corporation for any purpose whatsoever, provided, that said city, or its successors, may grant franchises thereon, for limited periods, for wharves and other public uses and purposes, and *may* lease said lands, or any part thereof, for limited periods, for purposes consistent with the trusts upon which said lands are held by the state of California and with the requirements of commerce or navigation at said harbor." (Italics ours.)

Other statutory authority for the leasing of tide lands is found in section 718 of the Civil Code, as amended in 1917 (Stats. 1917, p. 798), and as it existed until 1927, when it was again amended (Stats. 1927, p. 1173), the latter amendment having no effect on this case, having been passed subsequent to the trial thereof. That section, in part, provides:

" . . . the tide lands and submerged lands granted to any city by the state, or any lands belonging to such city adjacent to such tide lands and submerged lands, may be leased for a period not exceeding forty years if the grant from the state of California of the use of said tide lands and submerged lands does not provide specifically for a term of years for which said lands may be leased. Said tide lands and submerged lands and lands adjacent thereto can only be leased for industrial uses, the purpose of improvement and development of the harbor of said city, and the construction and maintenance of wharves, docks, piers or bulkhead piers or for other public uses and purposes consistent with the requirements of commerce or navigation at said harbor."

The law is well settled that the power to lease which exists by virtue of the above statutes, includes the power to lease to an individual, firm or corporation for the purpose of erecting a private wharf or pier. The leading case on the subject is *Pacific Coast S. S. Co.* v. *Kimball*, 114 Cal. 414 [46 Pac. 275]. In that case it was contended that the city of Monterey had no power to lease its tide or submerged land to a corporation with the intention that said lessee was to use the land to erect thereon a private wharf. The court decided otherwise, stating at page 416:

"I am unable to see, however, any grounds for this contention. A wharf is not, like a toll-bridge or a ferry, in its very nature a public utility. Wharves are often appropriated to the use of an individual or a company, and it cannot be doubted that Monterey could lease small portions of its water front for bathing grounds, or for any lawful purpose not injurious to the harbor or an inconvenience to commerce.

"That being so, I see no reason why it might not lease a small portion to a steamship company for its special use."

In *San Pedro etc. R. R. Co.* v. *Hamilton*, 161 Cal. 610

[37 L. R. A. (N. S.) 686, 119 Pac. 1073], the court, in holding that the constitutional prohibition against granting tide lands did not prohibit leasing them, used language which is pertinent here. At page 620 it is stated:

"The purpose of the constitutional provision was not to blight commercial enterprise, but to foster it. . . . It did not mean to abort commerce in embryo or to strangle it in its infancy by putting a bar upon the activities of private commercial enterprises. . . . To hold that the state, or that municipalities acting as its mandatories, may not lease, with proper restrictions of time and proper regard to public and quasi public use, lands such as these, so that private enterprise and capital may build up the commerce of our seaport cities, is to declare that all such commerce must await the slow and frequently incompetent initiative of the municipalities themselves—municipalities which frequently are unwilling to incur the expense and risk which would be accepted under reasonable terms by private citizens." (See, also, *City of Oakland* v. *Williams,* 206 Cal. 315 [274 Pac. 328], and 63 A. L. R. 614, note.)

Upon the authority of the above statutory provisions and the above cases, we take it to be settled law that the city of Redondo Beach had the authority and power to enter into a lease with defendant for the purpose of permitting him to erect a private wharf thereon. Appellants concede that the authority and power to so lease tide and submerged lands exists, but contend that the method by which this power was exercised was not proper. It is contended that the "Broughton Act," *supra,* which provides for the method by which certain franchises and privileges may be granted by a municipality, applies to the lease in question, and that since, admittedly, the procedure therein contained was not followed, the lease must be declared void.

Section 1 of the Broughton Act provides, in part:

"Every franchise or privilege to erect or lay telegraph or telephone wires, to construct or operate street or interurban railroads upon any public street or highway, to lay gas pipes for the purpose of carrying gas for light, heat or power, to erect poles or wires for transmitting electricity for light, heat or power, along or upon any public street or highway, or to exercise any other privilege whatever hereafter proposed to be granted by boards of supervisors,

boards of trustees or common councils, or other governing or legislative bodies of any county, city or county, city or town within this state, except steam railroads and except telegraph or telephone lines doing an interstate business, and renewals of franchises for piers, chutes or wharves, shall be granted upon the conditions in this act provided, ,and not otherwise.''

The act then provides that an ''applicant for any franchise or privilege above mentioned'' must file an application for the same with the governing body; that the governing body must then advertise the fact that such application has been received, and that the same will be sold to the highest bidder; and that the successful bidder must pay a two per cent gross receipt tax.

■ Appellants strenuously contend that the granting of the lease here in question was the granting or giving of a franchise or privilege, and since the above procedure was not followed, the alleged lease is void. If the Broughton Act applies to this situation appellants are correct. (*City of San Diego* v. *Kerckhoff*, 49 Cal. App. 478 [193 Pac. 801].) We are of the opinion that the Broughton Act has no application to the leasing of tide or submerged lands for the purpose of permitting the lessee to erect a private wharf thereon. Appellants cite many authorities in an endeavor to show that a lease is a franchise or privilege. In a broad and general sense we have no doubt that the granting of a lease is the granting of a privilege to the lessee, but that fact is immaterial if the statute in question used the expression in a more restricted meaning. Certainly there are a great many ''privileges'' granted to individual inhabitants which, by their very nature, could not come within the meaning of the Broughton Act. Thus, the right to construct gasoline tanks under sidewalks for filling stations, cutting into sidewalks and curbs for automobile drives; to erect signs, construct buildings, etc., amount to the giving of a ''privilege,'' in a general sense, by the city to an individual, and yet, obviously, those rights are not nor need not be advertised for sale and sold to the highest bidder.

■ Turning to the express terms of the Broughton Act quoted, *supra,* it is to be noted that the act particularly specifies the franchises or privileges to which it applies. It

is obvious that the act was only intended to apply to franchises or privileges granted to public utilities. The act might well apply to the grant of the right to erect a wharf for the public with the right to collect fees and tolls, but the act does not apply to the leasing of tide lands for the purpose of erecting a private wharf thereon. This view is further strengthened by the fact that the Broughton Act specifically provides that the successful bidder must pay to the county or municipality two per cent of the gross annual receipts arising out of the use and operation of the franchise. Obviously such a provision could not apply to a wharf used entirely for private purposes and from which no annual receipts would be received.

The only other point necessary to consider is whether or not the lease in question was for a private purpose. The first lease contained several objectionable features, including the express right to charge or collect fees and tolls, and to make rules and regulations for the operation of the wharf. These provisions were omitted from the second lease, that document specifically stating that the wharf in question was to be a "private pleasure pier." The trial court found on this point that from April 1, 1926, to July 1, 1926 (before the amended lease was entered into), the defendant collected certain charges from two fishermen operating boats from said wharf, and that from "July 1, 1926, to September 15, 1926, one boatman operating a live-bait boat and taking passengers for fishing trips in Redondo Beach harbor, operated from said wharf and paid to the defendant a certain charge for the sale and collection of tickets to his boat and for the use of the landing facilities of said wharf; that since about the 15th day of September, 1926, no person has used said wharf except the defendant, his employees and passengers on boats owned and operated by him; and no charges have been collected for the use of said wharf except as above stated." The complaint was filed herein on October 15, 1926. It is obvious, therefore, that both by the express terms of the lease and in actual practice the wharf is being used for private purposes only, and that the Broughton Act does not apply.

The judgment appealed from is affirmed.

Preston, J., Waste, C. J., Shenk, J., Seawell, J., and Langdon, J., concurred.