Ernest BESIG, Preston Cook, and Lidia Lagarda, Plaintiffs,

v.

Eugene L. FRIEND, Loris Digrazia, Peter F. Armstrong, Tommy Harris, Amy Meyer, Keith Eickman, Individually and in their capacities as the Recreation and Park Commission of the City and County of San Francisco, their agents, successors, and assigns, John J. Spring, in his capacity as General Manager of the Recreation and Park Department of the City and County of San Francisco, his agents, successors, and assigns, George R. Moscone, in his capacity as Mayor of the City and County of San Francisco, St. Francis Yacht Club, South End Rowing Club, Dolphin Boating and Swimming Club, San Francisco Rowing Club, Pacific Rod & Gun Club, Golden Gate Angling and Casting Club, Golden Gate Model Railroaders, San Francisco Model Railroad Club, Golden Gate Rifle and Pistol Club, Golden Gate Yacht Club, San Francisco Lawn Bowling Club, Golden Gate Lawn Bowling Club, California Association of Pioneer Women, San Francisco Model Yacht Club, Roy A. Lazzari, Defendants.

No. C–76–2878–CBR.

United States District Court, N. D. California.

Jan. 4, 1979.

Sandra Terzian-Feliz, Nancy Scott-Ince, San Rafael, Cal., Dennis Roberts, Oakland, Cal., for plaintiffs.

Pillsbury, Madison & Sutro, James Michael, James J. Walsh, Terry D. Carlone, San Francisco, Cal., for defendant St. Francis Yacht Club.

## MEMORANDUM OF OPINION

RENFREW, District Judge:

Plaintiffs Ernest Besig, Preston Cook, and Lidia La Garda residents of the City and County of San Francisco, brought this suit against the St. Francis Yacht Club and various other clubs leasing property from the City and County of San Francisco, claiming that they had been denied access to "public park property."[1] The suit was filed in federal court pursuant to 42 U.S.C. § 1983, as plaintiffs assert that defendants acted under color of state law to deprive them of their constitutional rights. They argue that conditioning access to public park property on membership in a private club conflicts with the constitutional guarantees of freedom of speech, freedom of association, equal protection, and due process. Plaintiffs also contend that the clubs' use of public property is unlawful under California common law, state constitutional provisions, and the San Francisco City and County Charter. Plaintiffs seek declaratory and injunctive relief granting them access to the property occupied by the clubs. The case is presently before this Court on defendant St. Francis Yacht Club's motion for dismissal or summary judgment and plaintiffs' cross motion for summary judgment.

After considering the briefs and arguments of counsel in support of the motions for summary judgment, this Court requested briefing on the applicability of the *Pullman* abstention doctrine[2] to this case. The case fits within the pattern of cases in

---

1. Plaintiffs sought to maintain a class action, but certification of the class was denied on the grounds that the class was not adequately defined and that a class action would not serve any useful purpose because of the nature of the relief sought.

   Plaintiffs also named as defendants members of the Recreation and Park Commission of the City and County of San Francisco, the general manager of the Recreation and Park Department, the Mayor of San Francisco, and the president of one of the defendant clubs.

   The St. Francis Yacht Club is named as a defendant in the first amended complaint. The Yacht Club was not named in the original complaint, which also denominated the suit a "class action" but was brought by a different plaintiff. That plaintiff withdrew from the original action.

2. *See Railroad Commission v. Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

which the *Pullman* doctrine has been invoked, for plaintiffs' federal constitutional claims can only be resolved after a determination of issues of state law. Plaintiffs' allegations of deprivation of constitutional rights rest on the theory that the St. Francis Yacht Club is excluding them and other members of the public from "public park property." Plaintiffs contend that the property was dedicated for park purposes and that a lease of this land to a private club is illegal. Defendants insist that the lease is lawful under state and local law and that the property rights acquired under the lease enable the club to exclude plaintiffs from the property.

Both parties oppose abstention, each side arguing that the state law issues clearly must be resolved in their favor. In fact, the appropriate resolution of the state law issues is far from clear. Since the determination of the state law questions presented in this case could obviate the need to decide the federal constitutional claims and would at least materially affect the nature of the federal issues presented, this Court has determined that abstention under the *Pullman* doctrine is appropriate in this case.[3]

### Factual Background

The St. Francis Yacht Club was incorporated in 1927 as a nonprofit organization. The articles of incorporation state that the club was organized for social purposes, including the purpose of developing and promoting aquatic sport. In 1927 the club obtained a ten-year lease on a small parcel of state tidelands property from the Board of State Harbor Commissioners. A clubhouse was built on this property, located on the Marina in San Francisco. In 1935 the state granted certain tidelands property to the City and County of San Francisco, including the parcel of land then being leased to the St. Francis Yacht Club. The statutory grant authorized the City to lease any portion of the property granted for a period not to exceed 10 years to a nonprofit corporation, club, or association organized for the purpose of developing and promoting aquatic sport:

"All of the above described real property hereby granted shall be forever held by said City and County of San Francisco and by its successors in trust for the uses and purposes and upon the express conditions following, to wit: said real property shall be used solely for aquatic, recreational, boulevard, park and playground purposes.

"Provided, however, that said City and County of San Francisco shall have power to set apart and assign, or lease, any of said property hereinbefore described for a period not to exceed ten years, to any corporation, club or association organized for the purpose of developing and promoting aquatic sport; provided, that no part of said property shall be set apart and assigned, or leased to any corporation, club or association the object of which is pecuniary profit." Ch. 437, Cal. Stats.1935.

The San Francisco Board of Supervisors resolved on April 5, 1937, that the entire parcel of land granted by this statute was "dedicated for park purposes as an addition and extension of Marina Park," and the resolution was approved by the Mayor on April 6, 1937. An ordinance approving a ten-year lease to the Yacht Club made by the Board of Park Commissioners was passed on April 19, 1937 and was approved by the Mayor on April 27, 1937. The City has continued to lease this same parcel of land to the Yacht Club, and the club currently holds a lease that will expire in the year 2014. The state legislature has amended the statutory grant twice, solely for the purpose of extending the permitted lease term, first to a 20-year period in 1963 (Ch. 1298, Cal.Stats.1963), and then to a 40-year period in 1970 (Ch. 670, Cal.Stats. 1970).

The St. Francis Yacht Club's lease with the City provides that "any rights granted

---

3. This abstention order extends only to the plaintiffs' suit against the St. Francis Yacht Club. This opinion does not consider whether abstention may be appropriate as to the other claims presented in this multiple-defendant case.

hereunder shall be enjoyed only by the Members of said YACHT CLUB and their bona-fide guests." In order to become a member of the Yacht Club, one must be sponsored by a club member and approved by the board. Regular members must pay initiation fees and monthly dues. The Yacht Club offers its members extensive dining and bar facilities at the clubhouse and organizes social functions for club members. In addition to the facilities at the clubhouse, the Yacht Club offers recreational facilities at Tinsley Island, an island in the San Joaquin Delta that was purchased by the club. The St. Francis Yacht Club is well known for its sailing activities. The Yacht Club rents slips at the yacht harbor, adjacent to the clubhouse, and maintains a fleet of small sailboats. Each year the Yacht Club sponsors numerous yacht races.

### Issues Presented

Plaintiffs contend that the St. Francis Yacht Club's exclusion of nonmembers from property leased from the City constitutes a denial of federal constitutional rights under color of state law. In support of their motion for summary judgment, they assert:

"Plaintiffs are guaranteed, by the federal constitution, as a privilege and immunity of United States citizenship, the right to use public parks and other facilities impressed with a public use, free from municipally imposed requirements of forced associations, arbitrary license fees, or the unfettered discretion of anyone." (Capitalization omitted.)

Plaintiffs' federal constitutional claim is based in large part on the rather novel theory that plaintiffs have a First Amendment right not to be required to associate with Yacht Club members in order to gain access to public park property. The parties disagree, however, as to whether the land leased by the club can be characterized as public park property. Plaintiffs insist that the land leased to the Yacht Club retains its character as a public park despite the provisions of the lease granting the club exclusive use of the property. Plaintiffs' federal constitutional claim is predicated on the assumption that a lease granting exclusive possession of this land to a private club with restrictive membership policies is invalid under state law. Since a ruling that the lease is unlawful under state law would obviate the need to consider the federal constitutional issues raised, the state law issues should be decided first in order to avoid the unnecessary decision of federal constitutional questions.

Although plaintiffs have attempted to demonstrate that the federal issue in this case is not intertwined with issues of state and local law, the parties' briefs focus primarily on California law and the San Francisco City and County Charter provisions relating to the legality of the Yacht Club's lease. Plaintiffs attack the validity of the lease on various grounds. In the brief submitted on the abstention issue, plaintiffs emphasize that this property was dedicated as public park land and that the City Charter, the California Government Code, and California cases impose restrictions on the use of park land. Plaintiffs contend that the Yacht Club's use of this property conflicts with those restrictions. In the memorandum supporting their motion for summary judgment, plaintiffs challenge the validity of the lease on several other grounds. First, plaintiffs argue that because the land leased by the Yacht Club is tidelands trust property, impressed with a trust for the benefit of the people of the state of California, the club's use of the land is an unlawful diversion to private use. Second, plaintiffs assert that the state legislature's authorization of the lease to the St. Francis Yacht Club violates the California Constitution's prohibition against gifts of public property. Third, plaintiffs argue that the City's lease to the Yacht Club violates provisions of the San Francisco City and County Charter, in that the lease does not promote public recreational activities.[4]

---

4. Plaintiffs have set forth several other possible bases for finding the lease invalid, but the grounds listed appear to be the major arguments supporting plaintiffs' claim. Having concluded that abstention is appropriate, the Court considers it unnecessary to discuss every state law issue raised by plaintiff.

Plaintiffs contend that access to the property leased by the Yacht Club may not lawfully be conditioned on membership in the club, as the Yacht Club's membership policies are "arbitrary and unreasonable." Although plaintiffs' fundamental complaint is the exclusionary nature of the club, they have also alleged that the club operates in a manner that discriminates as to race and sex. However, plaintiffs' conclusory allegations regarding discrimination are not supported by factual allegations that the Yacht Club discriminated against plaintiffs themselves. At oral argument on the cross motions for summary judgment, plaintiffs' counsel conceded that plaintiffs' objections to the club's operations are not based on an assertion that the club has discriminated against them on the basis of race or sex, but rather on the fact that the club's retention of discretion in selecting members serves to exclude the public and enables arbitrary discrimination. Plaintiffs do not seek summary judgment against the St. Francis Yacht Club on any claims of racial or sexual discrimination. Thus, the federal issues raised by these motions relate solely to public access to "public park property." Whether or not the property should be considered public park property depends upon state and local law. Moreover, since plaintiffs challenge the validity of the Yacht Club's lease on various state law grounds, resolving any one of these challenges adversely to defendant would avoid the federal issue. This Court has concluded that abstention under the *Pullman* doctrine is appropriate, for the numerous non-federal issues raised in this case cannot readily be resolved by looking to the authorities relied upon by the parties.

### Standing

As a preliminary matter, the Court must consider defendant's contention that plaintiffs do not have standing to maintain this suit. The Yacht Club's brief in support of its motion for summary judgment interprets plaintiffs' complaint as focusing primarily on the allegation that the Club has adopted discriminatory membership requirements, policies, and procedures, and has thereby violated the federal constitution. As plaintiffs have not applied for membership in the Yacht Club and assert that they do not wish to become members of the club, defendant concludes that they have not suffered any "injury in fact" as a result of these allegedly discriminatory practices. Yet this is not a suit where plaintiffs seek admittance to an organization and claim that they have unconstitutionally been denied membership. Plaintiffs' claim is premised on the belief that requiring membership in a private club such as the Yacht Club as a prerequisite to using public park property is unlawful.

In order to establish standing to sue, plaintiffs must allege specific facts indicating that the defendant's challenged actions harm them and that they would personally benefit if the court were to grant the relief sought. *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Plaintiffs have alleged that the Yacht Club's exclusion of the public from the property that the club leases from the City is illegal, and that the defendant's exclusive use of the property prevents plaintiffs from enjoying "public park property." If this Court were to grant the injunctive and declaratory relief sought, plaintiffs would be entitled to obtain access to this property without complying with the club's membership requirements. Thus, plaintiffs have standing to assert the claim that they have a right to access to this property, regardless of whether they will ultimately prevail on the merits of this claim.

### Issues of State and Local Law to be Resolved by the State Courts

#### 1. Use of Public Park Property

In their brief on the abstention issue, plaintiffs rely heavily on the argument that the property leased to the Yacht Club was dedicated as a public park prior to approval of the Yacht Club's lease, that the property was never formally abandoned as park land,

and that it therefore cannot be leased to a private club with restricted membership. Plaintiffs find support for this argument in the case of *San Vicente Nursery School v. County of Los Angeles,* 147 Cal.App.2d 79, 304 P.2d 837 (1957). In *San Vicente* the court held that a small nonprofit nursery school could not lawfully use park facilities, since "the primary purpose of such exclusive use was the benefit to the limited number of children attending the school and their parents, and * * * such exclusive use by the private group was not a public use or public purpose." 147 Cal. App.2d at 86, 304 P.2d at 841. The court stated that in the absence of express authority permitting such use the county could not lawfully permit the nursery school to use public park land.

Defendant cites *Harter v. San Jose,* 141 Cal. 659, 75 P. 344 (1904), in support of its contention that a city may lease public park land to a private entity. Yet in that case the California Supreme Court noted the public benefit derived from the establishment of a hotel on the leased park land, since "[t]he proposed hotel is for the use of the public." 141 Cal. at 666, 75 P. at 347. Similarly, in *City and County of San Francisco v. Linares,* 16 Cal.2d 441, 106 P.2d 369 (1940), the California Supreme Court noted that the building of hotels, restaurants, museums and the like in public parks furthers public enjoyment of the park and therefore is not inconsistent with public park use. It cited the earlier case of *Spires v. City of Los Angeles,* 150 Cal. 64, 87 P. 1026 (1906), in which the court upheld the use of a portion of a park for the building of a public library. In *Spires* the court emphasized that a public library contributes to public recreation and enjoyment of the park:

"Public buildings such as [museums or libraries] are for the benefit of the same public that enjoys the advantages of the park. There is nothing exclusive about it, and they are, in fact, erected and maintained as additional and ancillary means to promote the recreation and pleasure of those to whom the enjoyment of the park is devoted." 150 Cal. at 67, 87 P. at 1027.

Relying on these cases, plaintiffs conclude that the City may not lease park property to a club that excludes members of the public. Plaintiffs do not argue that any lease to a private club would be unlawful, but rather that a club could only use this property if membership were made available to all members of the public, without a requirement of sponsorship by a club member, and if the fees charged by the club were reasonably related to the services received. Defendant Yacht Club, however, insists that the club may operate as it presently does because the legislature, in granting the tidelands property to the city, authorized the city to lease "any of said property * * * to any corporation, club or association organized for the purpose of developing and promoting aquatic sport." Ch. 437, Cal.Stats.1935. Since at the time of the grant the Yacht Club was already leasing a portion of the tidelands property from the City, and since the Yacht Club had been organized in part to promote aquatic sport, it concludes that the legislature must have intended to authorize a lease to the Yacht Club, although the club restricted its membership and charged membership fees. Plaintiffs' argument that the statute should not be interpreted as authorizing a lease to the Yacht Club is founded on their view that the legislature could not lawfully authorize such a lease. Furthermore, plaintiffs point out that the statute merely permitted such a lease, rather than requiring one, and that the City, upon receiving the land, dedicated the entire parcel for park purposes and only subsequently approved a lease to the Yacht Club. Therefore, plaintiffs contend that the land is subject to the restrictions on the disposition of park land contained in the Charter of the City and County of San Francisco and the California Government Code, as well as those imposed by California case law. Section 7.403 of the City Charter provides that park land may be sold or otherwise disposed of when such land is no longer needed for park and recreational purposes. However, if the park land is sold or leased or if use of such land

for park purposes is discontinued, § 7.403 provides that the City must comply with the California Government Code provisions authorizing municipal corporations to sell or otherwise dispose of park land or to discontinue the use of land for park purposes. The Government Code sets forth certain procedures, including a requirement of either notice and hearings or a special election, that must be followed before park land is either sold or leased or used for non-park purposes. Cal.Govt.Code §§ 38440 et seq.

Defendant's response to plaintiffs' argument is simply that the lease was authorized by the state legislature, and that while the club is leasing the property it cannot be considered public park property. The resolution of this issue involves interpreting the statutory grant of the tidelands property to the City, determining the effect of the City's dedication of the entire property as public park land, in the context of the City's subsequent approval of the lease to the Yacht Club, and analyzing the interrelationship between the Charter provisions regarding leases of park land and the legislative authorization contained in the statutory grant. These issues should be left to the state courts.

### 2. Tidelands Trust Doctrine

▮ The St. Francis Yacht Club is located on tidelands trust property granted by the State of California to the City and County of San Francisco in 1935. Tidelands property is subject to public trust easements for the benefit of all the people of the state. *Mallon v. City of Long Beach,* 44

Cal.2d 199, 205, 282 P.2d 481, 484–485 (1955); *Lane v. City of Redondo Beach,* 49 Cal.App.3d 251, 256, 122 Cal.Rptr. 189, 193 (1975). Although the public trust easements are traditionally defined in terms of navigation, commerce, and fisheries, the California Supreme Court has noted that "[t]he public uses to which tidelands are subject are sufficiently flexible to encompass changing public needs." *Marks v. Whitney,* 6 Cal.3d 251, 259, 98 Cal.Rptr. 790, 796, 491 P.2d 374, 380 (1971).[5]

▮ Tidelands granted to a municipality are acquired subject to the public trust. *Mallon v. City of Long Beach, supra,* 44 Cal.2d at 209, 282 P.2d at 487. "The municipality as a trustee of tidelands, is obligated to achieve, not defeat the object of the trust." *Lane v. City of Redondo Beach, supra,* 49 Cal.App.3d at 257, 122 Cal.Rptr. at 193. The tidelands involved in the instant case were granted to the City and County of San Francisco to be used "solely for aquatic, recreational, boulevard, park and playground purposes." Ch. 437, Cal.Stats. 1935. Although these uses are not within the traditional public uses of navigation, commerce, and fisheries, the California Supreme Court has noted that general recreational purposes have been deemed public uses. *Marks v. Whitney, supra,* 6 Cal.3d at 259, 98 Cal.Rptr. at 796, 491 P.2d at 380. One California appellate court concluded that a grant of tidelands for recreational purposes should be interpreted as requiring that the land be used for recreational purposes insofar as those uses did not interfere with navigation, commerce, or fisheries.

**5.** In addition to common-law doctrine regarding tidelands, Article 10, § 3 of the California Constitution restricts the grant or sale of certain tidelands to private entities:

"All tidelands within two miles of any incorporated city, city and county, or town in this State, and fronting on the water of any harbor, estuary, bay, or inlet used for the purposes of navigation, shall be withheld from grant or sale to private persons, partnerships, or corporations; provided, however, that any such tidelands, reserved to the State solely for street purposes, which the Legislature finds and declares are not used for navigation purposes and are not neces-

sary for such purposes may be sold to any town, city, county, city and county, municipal corporations, private persons, partnerships or corporations subject to such conditions as the Legislature determines are necessary to be imposed in connection with any such sales in order to protect the public interest."

As the instant case involves a lease rather than a sale of tidelands to a private entity, the constitutional provision is not applicable to this case. *See City of Long Beach v. Vickers,* 55 Cal.2d 153, 161, 10 Cal.Rptr. 359, 364, 358 P.2d 687, 692 (1961).

*People v. City of Long Beach,* 200 Cal. App.2d 609, 617, 19 Cal.Rptr. 585,. 590 (1962).

Plaintiffs do not assert that the tidelands property occupied by the St. Francis Yacht Club may not be used for recreational purposes. Rather, they contend that since the land is subject to a public trust it must be used for public recreational purposes. Although plaintiffs admit that the legislature specifically authorized the City of San Francisco to lease tidelands property to a club organized to promote aquatic sport, they assert that the legislature could not lawfully authorize a lease to a private club such as the Yacht Club, as this would be inconsistent with the public trusts imposed on tidelands. Plaintiffs contend that a private entity could lawfully lease this land only if that entity were to promote public recreation.

The Yacht Club relies on the view that the state legislature intended to authorize the lease to the St. Francis Yacht Club, knowing that the Yacht Club would only permit club members to use the property, and argues that a lease of public property for private use is valid. The opinions cited by the Yacht Club do establish that the California courts accord great deference to legislative determinations regarding proper utilization of the tidelands trust lands, and it may well be that the California courts would uphold the validity of the City of San Francisco's lease to the St. Francis Yacht Club under tidelands trust doctrine viewing that lease as lawful in light of the authorization granted by the state legislature. Yet the cases cited by the Yacht Club do not compel that conclusion.

The Yacht Club correctly asserts that California cases have upheld leases of state tidelands property to private entities. In doing so the California courts have not only stated that deference should be paid to the state legislature's judgment regarding proper use of tidelands property, but have also found that in fact the challenged private use of leased tideland was not inconsistent with, but rather promoted, the trust purposes to which the property was subject. For example, in *San Pedro, Los Angeles, and Salt Lake R.R. Co. v. Hamilton,* 161 Cal. 610, 119 P. 1073 (1911), the California Supreme Court held that a lease of tidelands to a railroad was lawful, stating:

> "[P]ossession of the land, with its improvements, after the term of years, returns to the municipality and state, and in the mean time the interests of navigation and commerce are not impaired, but are in the highest degree stimulated and fostered. * * * What policy more beneficial to the state itself than this, it would not be easy to point out." 161 Cal. at 621, 119 P. at 1077.

Similarly, in *Boone v. Kingsbury,* 206 Cal. 148, 273 P. 797 (1928), *appeal dismissed and cert. denied for want of a substantial federal question, sub nom. Workman et al. v. Boone et al.,* 280 U.S. 517, 50 S.Ct. 66, 74 L.Ed. 587 (1929), the court upheld a statute granting permits to enter tidelands and prospect for oil and gas, stressing the public benefit flowing from such activity:

> "It is clear that one of the purposes of the Legislature * * * was to give to the citizens an opportunity to intercept * * * and to reduce to useful purposes oil, gas and mineral deposits * * *. Gasoline is so closely allied with state and national welfare as to make its production a matter of state and national concern. * * * It is a mover of commerce and fills the office of 'a public benefit.'" 206 Cal. at 181, 273 P. at 811–812.

Other cases regarding leases of tidelands property have also considered the public benefit to be derived from the lease in question.[6]

---

6. In *People v. City of Long Beach,* 51 Cal.2d 875, 338 P.2d 177 (1959), the California Supreme Court found that the operation of a Y.M.C.A. " 'for the benefit and for the promotion of the moral and social welfare of, members of the Armed Forces of the United States, merchant seamen and other persons engaged in and about the harbor and in commerce and navigation * * * ' " would benefit the public and would be consistent with the trust purposes of promoting commerce, navigation, and fishery. Because the Y.M.C.A. would promote

Defendant cites *Spalding v. United States,* 17 F.Supp. 957, 962 (S.D.Cal.1937), aff'd, 97 F.2d 697 (9 Cir. 1938), *cert. denied,* 305 U.S. 644, 59 S.Ct. 147, 83 L.Ed. 415 (1938), for the proposition that "[t]he right to lease tidelands for strictly private purposes is recognized in California." However, that statement was made in support of a holding that a private lessee of tidelands was not immune from federal taxation, for although the lessee might be serving a public purpose, he was not serving a governmental purpose. Similarly, in *Los Angeles Athletic Club v. Board of Harbor Commissioners,* 130 Cal.App. 376, 20 P.2d 130 (1933), the statement that a city could lease tidelands for private use supported the court's conclusion that the city as lessor acted in a private or proprietary capacity rather than exercising a governmental function. The court acknowledged that the city could only lease the tidelands for "public uses" but concluded that in leasing property to a private party for a public use, the city was not performing a governmental function. *Los Angeles Athletic Club, supra,* 130 Cal.App. at 386–387, 20 P.2d at 134–135. Although the lease involved a lease of tidelands for use as a yacht harbor, the court did not have occasion to address the issue of whether a private yacht club's use of tidelands property is of public benefit.[7]

Neither the *Spalding* case nor *Los Angeles Athletic Club* controvert the plaintiffs' contention that private lessees of tidelands must provide some benefit to the public. Moreover, the provisions of the California Government Code state that a city is only to lease tidelands for public purposes:

"A city may lease such tide and submerged lands and uplands for:

"(a) Industrial uses.

"(b) Improvement and development of city harbors.

"(c) Construction and maintenance of wharves, docks, piers, or bulkhead piers.

"(d) Other public uses consistent with the requirements of commerce or navigation in city harbors." Cal.Govt.Code § 37386.[8]

a public purpose, the court held that the lease did not constitute a gift of public funds to a private organization. As the Y.M.C.A. was apparently open to all persons " 'engaged in and about the harbor and in commerce and navigation,' " the Y.M.C.A. could be said to perform a significantly different function and serve a broader segment of the public than the St. Francis Yacht Club. Thus, *People v. City of Long Beach* appears distinguishable from the instant case.

The Yacht Club also relies on *People v. Monstad,* 209 Cal. 658, 289 P. 847 (1930). In *Monstad* the court held that a statute dealing with grants of franchises or privileges to public utilities did not apply to a lease of tidelands for the purpose of building a "private pleasure pier", because a wharf used entirely for private purposes does not constitute a public utility. 209 Cal. at 665, 289 P. at 850. The plaintiffs in that case had conceded that the city could validly lease the property to defendant to build a private wharf, and the court concluded that this was, in fact, the settled law. However, in reaching that conclusion, the court relied on a statutory provision authorizing leases of tidelands for " 'public uses and purposes consistent with the requirements of commerce or navigation * * *.' " The court also referred to the statutory grant to the city, which authorized the city to grant franchises "for wharves and other public uses and purposes" and authorized the city to lease tidelands property for uses

consistent with the tidelands trust purposes. The opinion simply did not address the issue of whether the lease of the tidelands property for "private purposes" also fulfilled a public purpose.

7. The Yacht Club also relies on *Pacific Coast Steamship Co. v. Kimball,* 114 Cal. 414, 46 P. 275 (1896), as authorizing the lease of tidelands for purely private use. That opinion did not discuss tidelands trust doctrine or the requirement that tidelands be devoted to public purposes. The court stated that it could "see no reason" why the city of Monterey could not lease the wharf to the company for "its special use." 114 Cal. at 416, 46 P. at 276. Perhaps the court concluded that the lease did benefit the public, as the opinion notes that "[t]he giving of the lease has promoted commerce at Monterey." 114 Cal. at 417, 46 P. at 276. Certainly, this early opinion did not clearly set forth the standards governing the leasing of tidelands to private parties.

8. The same restriction is found in California Civil Code § 718, which provides in part:

"Said tidelands, submerged lands and uplands [owned or controlled by a city] may be so leased only for industrial uses, the improvement and development of any harbor, or harbors, of said city, the construction and maintenance of wharves, docks, piers or bulkhead piers, or any other public use or

California Government Code § 37387 provides that a city may lease tidelands for park, recreational, residential, or educational purposes under conditions not inconsistent with the trust imposed on the tidelands if leasing the property for industrial use would be inimical to the best interests of the city.

The Yacht Club argues that the club is entitled to use the tidelands property for strictly private purposes, yet the club also contends that it fulfills a public purpose. The 1935 statutory grant of tidelands to the City of San Francisco did not contain an express legislative finding that a private club with restricted membership that promotes aquatic sport would confer a benefit on the people of California, and California case law does not clearly mandate judicial deference to an implicit legislative finding of public benefit in a case such as this. Relying on a recent San Francisco City Attorney opinion upholding the validity of the Yacht Club's lease, the Yacht Club enumerates the ways in which the Yacht Club might be said to confer a benefit on the people of the state. According to that opinion, the club's promotion of sailing may encourage young people to join organizations such as the Coast Guard and Merchant Marine; many persons, including youth, are afforded an opportunity to gain skill and experience in navigation; the club's yacht races are a tourist attraction; and the club's activities help provide jobs to those who serve and equip persons active in the sport of sailing. San Francisco City Attorney Opinion No. 78–54 at 8–9 (May 25, 1978).

Case law dealing with tidelands trust property frequently emphasizes the limited scope of judicial review of legislative determinations regarding appropriate administration of tidelands property.

"[I]n terms of the utilization of tidelands, the question of what is or what is not beneficial to the public will frequently involve the preference of one trust use over another, and * * * that is a legislative question." *County of Orange v. Heim*, 30 Cal.App.3d 694, 715, 106 Cal. Rptr. 825, 843 (1973).

In fact, in those instances where the state legislature determines that certain tidelands property is no longer useful for trust purposes, the legislative determination is considered conclusive, unless it has the effect of impairing the power of succeeding legislatures to protect, improve, and develop the public interest in commerce, navigation, and fisheries. *See County of Orange v. Heim, supra,* 30 Cal.App.3d at 717, 106 Cal.Rptr. at 844, and cases cited therein. Yet deference to legislative judgment is not so great that courts will readily imply a legislative finding that tidelands property is to be freed from the public trust:

"[T]hat intent must be clearly expressed or necessarily implied. It will not be implied if any other inference is reasonably possible." *People v. California Fish Co.,* 166 Cal. 576, 597, 138 P. 79, 88 (1913).

purpose consistent with the requirements of commerce or navigation at, or in, any such harbor or harbors."

The court recognized these restrictions on the use of tidelands property in *Martin v. Smith*, 184 Cal.App.2d 571, 7 Cal.Rptr. 725 (1960). In that case, the court held that a sublease of tidelands property for commercial purposes, including running a restaurant, cocktail lounge, and small shops catering to those who came to the yacht harbor, was consistent with the trust purposes of promoting commerce and navigation. It appears from the opinion that these facilities were all to be open to the public.

Admittedly, a private lessee could fulfill a public purpose without granting unrestricted access to the leased property to the general public. In *City of Oakland v. Williams*, 206 Cal. 315, 274 P. 328 (1929), the California Su-

preme Court found that a lease of a warehouse located on tidelands property to a private company fulfilled the public purpose of promoting development of the harbor and harbor commerce. *City of Oakland v. Williams, supra,* 206 Cal. at 328–330, 274 P. at 333–334. The court held that the lessee fulfilled a public purpose despite the fact that the lease granted the company exclusive use of the property.

In the instant case, however, plaintiffs contend that the defendant's use of tidelands property does not constitute a public use and that the club's recreational programs would only fulfill a public purpose if made available to members of the public. Plaintiffs argue that providing warehouse facilities to the public is of public benefit, but that the operation of a private club such as the Yacht Club is not.

Similarly, in considering the validity of the Yacht Club's lease, the California courts might take into account the absence of a legislative finding that the use of the tidelands property by a private club such as the St. Francis Yacht Club would be of public benefit and would be consistent with the trust purposes imposed on the property. The state courts might conclude that the state legislature either had not found or could not reasonably have found that use of this property by a private club with restricted membership produces a public benefit. Alternatively, the state courts might defer to an implied legislative determination that a private club's promotion of aquatic sports is of benefit to the people of California and is consistent with the public trust imposed on California tidelands.

3. *The California Constitutional Prohibition Against Gifts of Public Property*

▮ Article 16, § 6 of the California Constitution provides:

"The Legislature shall have no power * * * to make any gift or authorize the making of any gift, of any public money or thing of value to any individual, municipal or other corporation whatever * * *."

A transfer of property by the state is not a "gift" in violation of this constitutional provision if the transfer is supported by adequate consideration or if the transfer serves a valid public purpose. *Winkelman v. City of Tiburon,* 32 Cal.App.3d 834, 844, 108 Cal. Rptr. 415, 422 (1973). Where the state conveys property to a municipality, the transfer must serve a statewide public purpose, for the conveyance must be for a purpose that is of interest and benefit generally to the people of the transferor entity. *Golden Gate Bridge and Highway District v. Luehring,* 4 Cal.App.3d 204, 208, 84 Cal. Rptr. 291, 295 (1970). *See also Mallon v. City of Long Beach,* 44 Cal.2d 199, 211, 282 P.2d 481, 488 (1955). The California Supreme Court has held that a grant of tidelands in trust to a municipality, made in furtherance of the interest of the entire state in the development of its harbors, does not violate the constitutional prohibition against gifts. *Mallon v. City of Long Beach, supra,* 44 Cal.2d at 210, 282 P.2d at 488.

Plaintiffs contend that the legislature's authorization of a lease of tidelands to a private club violates the California constitutional provision prohibiting gifts of public property, as such a lease would fulfill no public purpose. The Yacht Club cites a San Francisco City Attorney opinion that considered this issue:

"The city could enter into certain types of leases under the authority of this provision with no resulting gift to the city— for example, a lease to a corporation, club or association which is entirely open to the public and serves a statewide public need for recreational activity. However, the city could also enter into certain types of leases which would be unconstitutional. If the city leased the property to a corporation, club or association which served no statewide public purpose and which paid rent to the city, such a lease would help fill city coffers without any return to the donor agency, the State, and thus it would violate Article 16, Section 6 of the Constitution. Since the Saint Francis Yacht Club has been paying rent to the City in consideration for its leasehold interest, it is necessary to determine whether a lease with the Saint Francis Yacht Club serves a statewide public purpose." San Francisco City Attorney Opinion No. 78–54, at 7 (May 25, 1978).

The opinion concludes that a legislative determination that the Yacht Club serves a public purpose could not be considered totally arbitrary and therefore should be upheld. *Id.* at 9.

The California courts have formulated the standard of judicial review of legislative determinations regarding public purpose in various ways. In *Mannheim v. Superior Court,* 3 Cal.3d 678, 691, 91 Cal.Rptr. 585, 592, 478 P.2d 17, 24 (1971), the California Supreme Court stated:

"The concept of public purpose has been liberally construed by the courts, and the

Legislature's determination will be upheld unless it is totally arbitrary. [Citations omitted.] The fact that individuals may be incidentally benefited is irrelevant."

In a subsequent decision, the court noted that a wide variety of welfare and other social programs had been upheld as furthering a public purpose,[9] for the legislature's discretion "will not be disturbed by the courts so long as that determination has a reasonable basis." *County of Alameda v. Carleson*, 5 Cal.3d 730, 746, 97 Cal.Rptr. 385, 396, 488 P.2d 953, 964 (1971), *appeal dismissed for want of a substantial federal question*, 406 U.S. 913, 92 S.Ct. 1762, 32 L.Ed.2d 112 (1972). More recently, the California Supreme Court has stated that no gift of public property occurs "if a direct and substantial public purpose is served and non-state entities are benefited only as an incident to the public purpose." *California Housing Finance Agency v. Elliott*, 17 Cal.3d 575, 583, 131 Cal.Rptr. 361, 365, 551 P.2d 1193, 1197 (1976). The opinion then upheld a housing program as serving a public purpose, since the express legislative finding of public benefit was not "unreasonable" and the legislative program was closely tailored to promote valid public purposes.

Plaintiffs point out that in this case there was no express legislative finding of public benefit, and they assert that a legislative determination that the Yacht Club fulfills a public purpose would be unreasonable. From the plaintiffs' viewpoint, the lease to the Yacht Club is solely for the benefit of private individuals, rather than fulfilling a direct and substantial public purpose that only incidentally benefits private persons. This Court's decision to abstain will enable the state courts to consider the degree to which legislative judgment should be upheld in such cases.

### 4. The Provisions of the San Francisco City and County Charter

The tidelands property occupied by the St. Francis Yacht Club is leased to the club by the City and County of San Francisco through the Recreation and Park Commission. The San Francisco City Charter provisions governing the powers and duties of the Recreation and Park Commission include the statement:

"It shall be the policy of the commission to promote and foster a program providing for organized public recreation of the highest standard." § 3.552, San Francisco City Charter.

Plaintiffs contend that the lease to the Yacht Club is contrary to this provision and is therefore invalid. In 1957 the City Attorney concluded that a proposed lease of park land to a boys' club would be invalid, as it would conflict with this policy of providing public recreation:

"Section 42 of the Charter [now § 3.552], which provides the policy of the Commission shall be to promote and foster a program providing for organized public recreation of the highest standards, prevents the contemplated use. The use of the property here would be for the benefit of only a limited number of selected boys, excluding all other persons from full and free use of it." San Francisco City Attorney Opinion No. 57–1184, at 1 (August 6, 1957).

In a 1977 opinion, the City Attorney again relied on § 3.552 of the Charter in concluding that rowing clubs leasing land in Aquatic Park from the City could not lawfully exclude members of the public from the clubs' facilities. San Francisco City Attorney Opinion No. 77–56, at 2 (December 29, 1977).[10] Numerous other City Attorney opinions have concluded that the City cannot lawfully lease park property to private groups, since such use of the property

**9.** Such programs included aid for the needy aged, aid to indigent sick persons, and the release of liens on property owned by indigent welfare recipients. *See County of Alameda v. Carleson*, 5 Cal.3d 730, 746, 97 Cal.Rptr. 385, 396, 488 P.2d 953, 964 (1971), *appeal dismissed*

*for want of a substantial federal question*, 406 U.S. 913, 92 S.Ct. 1762, 32 L.Ed.2d 112 (1972).

**10.** This opinion considered the legality of leases to two rowing clubs who have been named as defendants in this suit.

would not be a public use. *See* opinions cited in San Francisco City Attorney Opinion No. 70–68, at 1 (December 1, 1970).

In considering the validity of the lease to the St. Francis Yacht Club, the City Attorney remarked that "[u]nder a different set of circumstances, a lease to a club for private recreation might be invalid as a violation of [Section 3.552 of the Charter]," yet found the Yacht Club's lease with the City lawful. The opinion relied on the extended duration of the club's lease with the City, the fact that the club had expended a considerable amount of money on facilities, the club's provision of recreational boating for "a large segment of the public interested in the sport of sailing," and the provision in the statutory grant to the City authorizing leasing of the granted property to clubs promoting aquatic sport. The City Attorney stated that "[t]he State Legislature clearly found operation of a yacht club at that location of public benefit." Opinion No. 78–54, *supra*, at 15. Stating that Section 3.552 of the Charter is simply a policy statement that affords the Recreation and Park Commission a certain degree of flexibility in determining how to effectuate a program of organized public recreation, the City Attorney concluded that a lease of property under the jurisdiction of the Recreation and Park Commission to a private organization for non-public recreational purposes is not automatically a violation of the Charter provision. Opinion No. 78–54, *supra*, at 15. The opinion overruled prior City Attorney opinions to the extent they disagreed with this conclusion.

The issue of whether the lease to the Yacht Club conflicts with the San Francisco City Charter provision is dependent upon the resolution of issues of local law and upon a determination of the effect of this Charter provision in light of the statutory grant involved in this case. These issues are more properly resolved by the state courts.

*The Pullman Abstention Doctrine*

Under the *Pullman* abstention doctrine,

" * * * when a federal constitutional claim is premised on an unsettled question of state law, the federal court should stay its hand in order to provide the state courts an opportunity to settle the underlying state-law question and thus avoid the possibility of unnecessarily deciding a constitutional question." *Harris County Commissioners Court v. Moore*, 420 U.S. 77, 83, 95 S.Ct. 870, 875, 43 L.Ed.2d 32 (1975).

The United States Supreme Court concluded in *Railroad Commission v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), that abstention in such cases is an appropriate exercise of the federal court's equitable discretion, consonant with the goals of maintaining harmonious federal-state relations and avoiding the unnecessary decision of federal constitutional questions. The Court noted that in resolving an unsettled issue of state law, "no matter how seasoned the judgment of the district court may be, it cannot escape being a forecast rather than a determination." 312 U.S. at 499, 61 S.Ct. at 645. More recently, the Supreme Court has stated that although abstention is the exception, not the rule, it is appropriate " 'in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law.' " *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). Moreover, in *Harris County Commissioners v. Moore, supra*, 420 U.S. at 88, 95 S.Ct. at 877, the Supreme Court concluded that the district court had erred by failing to abstain, "[b]ecause the federal claim in this case is 'entangled in a skein of state law that must be untangled before the federal case can proceed,' *McNeese v. Board of Education*, 373 U.S. 668, 674, [83 S.Ct. 1433, 10 L.Ed.2d 622] (1963) * * *."

The Ninth Circuit Court of Appeals in *Canton v. Spokane School District, No. 81*, 498 F.2d 840, 845 (9 Cir. 1974), interpreted *Pullman* as requiring that three tests be met before a federal court should abstain under the *Pullman* doctrine:

"(1) The complaint 'touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open.'

"(2) 'Such constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy.'

"(3) The possibly determinative issue of state law is doubtful." [Footnote omitted.]

These criteria were not met in the *Canton* case. However, in *Rancho Palos Verdes Corp. v. City of Laguna Beach*, 547 F.2d 1092 (9 Cir. 1976), the Ninth Circuit Court of Appeals found that these requirements were fulfilled and that abstention was appropriate.[11] *Rancho Palos Verdes* was a civil rights suit brought by a landowner against the City of Laguna Beach, city council members, the planning commission, and others, charging that defendants had engaged in a conspiracy to deprive plaintiff of the use of his undeveloped real property. Although the suit was brought under 42 U.S.C. §§ 1983 and 1985, and the Ninth Circuit Court of Appeals had commented in *Canton* that " 'cases involving vital questions of civil rights are the least likely candidates for abstention,' " *Canton, supra*, 498 F.2d at 846, the district court nevertheless concluded that abstention was wholly appropriate under the *Pullman* doctrine. *Rancho Palos Verdes Corp. v. City of Laguna Beach*, 390 F.Supp. 1004, 1005 (1975).[12] Plaintiffs in the instant case also base their federal claim on § 1983. Yet as the major thrust of their complaint is the argument that the Yacht Club occupies public park land and that the Yacht Club's lease is invalid under state and local law, this Court has concluded that determination of these critical issues by the state courts is desirable, and that abstention is wholly appropriate in this case, as it was in *Rancho Palos Verdes*.

Plaintiffs contend that this tidelands property, granted to a public entity and dedicated to recreational purposes, must be used for public rather than private recreation. The use of California coastal property for public recreation is a significant social policy issue that should be left to the state courts to resolve. The California Supreme Court has noted the "strong policy expressed in the constitution and statutes of this state of encouraging public use of shoreline recreational areas," *Gion v. City of Santa Cruz*, 2 Cal.3d 29, 42, 84 Cal.Rptr. 162, 170, 465 P.2d 50, 58 (1970). This declaration of public policy influenced one California appellate court to hold that a municipality's proposed development of tidelands property would unlawfully interfere with public access to tidelands. *Lane v. City of Redondo Beach*, 49 Cal.App.3d 251, 122 Cal. Rptr. 189 (1975). The state legislature has recently recognized the urgent need for additional public recreation facilities, particularly in urban areas and along the coast. The legislative findings of the Nejedly-Hart State, Urban, and Coast Park Bond Act of 1976, Cal.Public Resources Code §§ 5096.111–5096.139, provide in part:

"(a) It is the responsibility of this state to provide and to encourage the provision of recreational opportunities for the citizens of California.

"(b) It is the policy of the state to preserve, protect, and, where possible, to restore coastal resources which are of significant recreational or environmental importance for the enjoyment of present and future generations of persons of all income levels, all ages, and all social groups."

"(a) The demand for parks, beaches, recreation areas and recreational facilities, and historical resources preservation

**11.** *See also Sederquist v. City of Tiburon*, 590 F.2d 278 (9 Cir. 1978); *Newport Investments v. City of Laguna Beach*, 564 F.2d 893 (9 Cir. 1977) (abstention orders affirmed, citing *Rancho Palos Verdes, supra* ).

**12.** The Ninth Circuit Court of Appeals again affirmed a district court decision to abstain in a

§ 1983 suit in *Newport Investments v. City of Laguna Beach, supra*, 564 F.2d 893. *See also Jensen v. Yonamine*, 437 F.Supp. 368 (D.Hawaii 1977); *Webber v. Skoko*, 432 F.Supp. 810 (D.Or.1977) (abstention ordered in civil rights suits).

projects in California is far greater than what is presently available, with the number of people who cannot be accommodated at the area of their choice or any comparable area increasing rapidly.

\* \* \* \* \* \*

"(h) Cities, counties, and districts must exercise constant vigilance to see that the parks, beaches, recreation lands and recreational facilities, and historical resources they now have are not lost to other uses \* \* \*." Cal.Public Resources §§ 5096.112(a) and (b) and 5096.-113(a) and (h).[13]

Although these general policy statements support the plaintiffs' position, they must be viewed in light of the fact that the state legislature expressly authorized the City and County of San Francisco to lease tidelands property to clubs promoting aquatic sport and that a substantial body of case law supports the Yacht Club's view that the courts should defer to legislative judgment regarding proper use of public property, including tidelands trust property. Plaintiffs' demand that this property be devoted to public recreational use presents an issue that "touches a sensitive area of social policy upon which the federal courts ought not to enter." Thus, this case meets the first requirement for abstention established in *Canton*.

The second *Canton* test is that the federal constitutional issues presented by the case could be avoided by a definitive ruling on a state law issue. That test is also satisfied, for as in *Rancho Palos Verdes,* the "federal questions depend on underlying questions of state law, and the resolution of one of those state questions could obviate the need for federal constitutional adjudication." *Ran-*

cho *Palos Verdes, supra,* 547 F.2d at 1095. If a state court were to rule that the City's lease to the Yacht Club is invalid, the court could grant appropriate relief, and the federal constitutional issues would not have to be reached. If the lease were to be held valid, a substantially different federal issue would be raised, for plaintiffs presently present their federal claims in the context of their assumption that the lease is invalid. In order to address the federal issue, this Court would at least have to determine whether this property should be regarded as "public park property." "Resolution of the state law question is thus a necessary preliminary to reaching the federal constitutional question." *Rancho Palos Verdes, supra,* 547 F.2d at 1095.

The final *Canton* requirement is that the possibly determinative state law issues are doubtful. This opinion has set forth at some length the nature of the major state law issues presented in this case and the Court's reasons for concluding that the appropriate resolution of these issues under California law is unclear. A thorough review of the authorities cited by the parties demonstrates that the third *Canton* test has been met in this case.

■ This Court is not unmindful of the delay and expense to the parties attendant upon a decision to abstain. However, even after considering these factors, the Court has concluded that it should abstain from exercising jurisdiction in plaintiffs' action against the St. Francis Yacht Club. This Court reserves jurisdiction to consider any federal claims that may remain after state adjudication, in accordance with the rule expressed in *Newport Investments v. City*

---

13. Similarly, the legislative findings of the Roberti-Z'berg Urban Open-Space and Recreation Program Act, Cal.Public Resources Code §§ 5620–5623, provide in part:

"The Legislature hereby finds and declares:
"(a) The demand for recreation areas, facilities, and programs in California is far greater than the present supply, with the number of people who cannot be accommodated at the area of their choice or any comparable area increasing rapidly.

"(b) The demand for recreation areas, facilities, and programs in the urban areas of our state are even greater \* \* \*.

\* \* \* \* \* \*

"(f) Cities, counties, and districts must exercise constant vigilance to see that the recreation lands and facilities they now have are not lost to other uses; they should acquire additional lands as such lands become available; they should take steps to improve the facilities they now have." Cal.Public Resources Code § 5622.

*of Laguna Beach*, 564 F.2d 893 (9 Cir. 1977).[14]

Accordingly, IT IS HEREBY ORDERED that plaintiffs' action against the St. Francis Yacht Club is stayed pending resolution of the state issues in the state courts.

---

**14.** Plaintiffs may either raise all their claims, state and federal, in state court or may reserve the federal issues for the federal court. *Eng-*

*land v. Louisiana State Board of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).